**STATE of Missouri,
Plaintiff/Respondent,**

v.

**James WATSON, Defendant/Appellant.**

**No. 60134.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 18, 1992.

John Klosterman, St. Louis, for defendant/appellant.

William L. Webster, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

CRANE, Judge.

A jury found defendant James Watson guilty of the offenses of second degree murder in violation of § 565.021 RSMo 1986 and armed criminal action in violation of § 571.015 RSMo 1986. The trial court sentenced him to concurrent terms of thirty years imprisonment for second degree murder and three years imprisonment for armed criminal action. The charges arose out of the shooting death of Clarence Grimes during a drug transaction. At trial defendant admitted shooting Grimes, but claimed he had acted in self-defense. Defendant appeals from the judgment on the grounds that the trial court erred in denying his motion for acquittal for insufficien-

cy of the evidence, in denying his motion for acquittal based on the state's opening statement, in overruling his objection to statements made in closing argument and in denying a motion for a mistrial when a witness "burst into tears." He further contends the trial court plainly erred in not declaring a mistrial or granting other relief when the prosecutor argued that defendant had not presented evidence to support his claim of self-defense. We affirm.

The evidence, viewed in the light most favorable to the verdict, reveals that Youree Hall advised defendant, who was his close friend, that he had a problem with the victim, Clarence Grimes, and he owed Grimes approximately $6,000. At that time defendant had never met Grimes. On February 13, 1990, Hall came to defendant's house and told defendant that Grimes was coming over to sell Hall some drugs. Hall asked defendant to accompany him and to carry Hall's .45 caliber automatic pistol "to watch his back." Defendant agreed to do this. After Grimes arrived defendant asked them to take their business around the corner, which they did, and defendant followed them. Hall told Grimes he had $10,000. Grimes gave Hall a blue bag. Hall pulled a plastic bag out of the blue bag and handed it to defendant who agreed it was cocaine. Hall gave Grimes a brown paper bag. Grimes turned away without looking into the brown paper bag he was holding and then turned back towards defendant. Defendant shot him in the forehead. Defendant and Hall ran to defendant's house, left the pistol and the cocaine, picked up two women, and went to a downtown hotel. They later had a friend retrieve both the weapon and the cocaine, deliver the cocaine to Hall at the hotel, and destroy the weapon. In the month following the shooting, Hall gave defendant $4,000.

Grimes was discovered by police lying unconscious in the street where he was shot. He was taken by ambulance to a hospital where he died from the gunshot wound the next day. The police also retrieved from the scene a brown paper bag with Grimes' blood type on it which contained only donuts, cookies and a wrapper.

When initially questioned by police, defendant denied any knowledge of either the victim or the shooting. The second time he was questioned, defendant denied knowledge of the shooting and told the police he had spent the entire evening with Youree Hall and that they had spent the entire night at the downtown hotel. The third time he was questioned, after being apprised of the evidence against him, he admitted the shooting in a taped statement which was played to the jury at trial. In his statement he said that he shot Grimes because, as Grimes turned back towards him, his right hand moved towards his waistband. He thought Grimes might have a weapon, but he did not see one.

In his first point defendant claims the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because the state failed to adduce sufficient evidence to prove beyond a reasonable doubt that defendant did not act in self-defense. Defendant's claim of self-defense was based on his trial testimony that he believed the victim was reaching for a gun. Defendant argues that this is one of those rare cases where defendant was entitled to acquittal by the court as a matter of law. We disagree.

Section 563.031.1 RSMo 1986 provides that self-defense may be justification for the use of physical force when and to the extent a person reasonably believes such force is necessary to defend himself from what that person reasonably believes to be the use or imminent use of unlawful force by the other person. Deadly force may be used in self-defense only when there is: "(1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and need to take a life." *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984). Some

affirmative action, gesture, or communication by the person feared, indicating the immediacy of the danger, the ability to avoid it, and the necessity of using deadly force must also be present. *Id.*

■ The defendant has the burden of injecting the issue of justification. § 563.-031.4. However it does not matter which side produces the evidence. *State v. Morley*, 748 S.W.2d 66, 68 (Mo.App.1988). If there is evidence to support the defense, then the state has the burden of disproving self-defense beyond a reasonable doubt. *Id.* If all the evidence is undisputed and uncontradicted and conclusively establishes self-defense, the trial court may find self-defense as a matter of law and dispose of a murder charge by acquittal. *State v. Lett*, 715 S.W.2d 557, 559 (Mo.App.1986); *State v. Thornton*, 532 S.W.2d 37, 42–43 (Mo. App.1975). If the evidence is not free of dispute, self-defense is a jury question. *Lett*, 715 S.W.2d at 559; *Thornton*, 532 S.W.2d at 43.

■ This is not one of the rare cases in which defendant would be entitled to acquittal on the grounds of self-defense as a matter of law. In testing the sufficiency of the evidence on a motion to direct a verdict of acquittal, we view the evidence and all reasonable inferences therefrom in the light most favorable to the state and we disregard all contradictory evidence and inferences. *State v. Caldwell*, 434 S.W.2d 571, 574–75 (Mo.1968). Defendant relies on his statements to police officers and his trial testimony in support of his argument that all of the evidence established self-defense. Although there was no other witness who testified to the events surrounding the shooting, other evidence adduced at trial supported reasonable inferences consistent with murder and consciousness of guilt and inconsistent with self-defense. Defendant knew Hall had a problem with the victim and owed the victim money. Defendant voluntarily accompanied Hall to the crime scene armed with Hall's weapon. Hall represented to the victim that he had $10,000, but the bag Hall gave the victim in exchange for the cocaine contained donuts and cookies instead of money. The victim was not aware of the true contents of the bag when he turned back towards defendant. Defendant never saw the victim with a weapon and there was no evidence that the victim had a weapon. After the shooting defendant fled the scene, temporarily disposed of the gun and cocaine, and went to a hotel with Hall and two women. He later had someone destroy the gun. He received $4,000 from Hall after the shooting. He denied knowledge of the shooting to the police on two occasions and used his presence at the hotel as an alibi. He did not confess until he learned there was substantial evidence against him. This evidence presents a jury question on the issue of self-defense. The trial court did not err in failing to direct a verdict of acquittal.

In his second point, defendant asserts the trial court erred in overruling his motion for judgment of acquittal after the state's opening statement. He argues that the state failed to set forth in its opening statement any evidence that defendant acted with deliberation or cool reflection.

The state's opening statement provided in pertinent part:

> ... the defendant tells the police that on the night of February 13th he met with Youree Hall, and they were going to meet Clarence Grimes for purposes of obtaining some drugs.
>
> Prior to meeting with Clarence Grimes, Youree Hall gave the defendant a .45 caliber automatic. They proceeded and met with Clarence Grimes, and during this drug transaction, the defendant shot Clarence Grimes once in the head with the .45 caliber. They ran from the scene and after that, Youree Hall paid the defendant approximately $4,000.

■ The state is required to make an opening statement in the trial of a criminal offense. Rule 27.02(d); § 546.070(1) RSMo 1986. An opening statement will withstand a motion for judgment of acquittal if it contains facts sufficient to make a submissible case. *State v. Spain*, 759 S.W.2d 871, 874 (Mo.App.1988). We will not reverse a conviction because of a defective opening statement absent a showing of prejudice to the defendant. *Id.*

Defendant was charged with first degree murder. To make a submissible case of murder in the first degree, the state was required to show, beyond a reasonable doubt, that defendant "knowingly cause[d] the death of another person after deliberation upon the matter." § 565.020.1 RSMo 1986. "Deliberation" is defined as "cool reflection for any length of time no matter how brief." § 565.002(3) RSMo 1986. Deliberation may be inferred from the circumstances surrounding the homicide. *State v. Grubbs,* 724 S.W.2d 494, 498 (Mo. banc 1987), *cert. denied, Grubbs v. Missouri,* 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987).

The prosecutor stated the defendant told police that Youree Hall supplied him with a .45 caliber automatic prior to meeting the victim to purchase drugs. He stated that defendant shot the victim with the weapon during the drug transaction. He also stated that Hall provided defendant with a large sum of money after the shooting. From the state's recitation of these facts, jurors could have reasonably inferred defendant's deliberation.

Moreover, defendant has failed to demonstrate prejudice as a result of the opening statement. Defendant was convicted of the lesser offense of murder in the second degree. Deliberation is not an essential element of this crime. There is no claim that the facts recited in the opening statement failed to make a submissible case of second degree murder. In this situation there is no prejudice. *State v. Campbell,* 830 S.W.2d 475, 477 (Mo.App. 1992). Defendant's second point is denied.

In his third point, defendant contends the trial court erred by overruling his objection to the prosecutor's statement in closing argument "that the brown paper bag found near Clarence Grimes had been given to him by Youree Hall." Defendant asserts this remark was improper because the state presented no evidence that linked the bag to Grimes. This claim is wholly without merit. The state has the right to argue reasonable inferences from the evidence which are justifiable, and may state a conclusion if that conclusion is fairly drawn from the evidence. *Clemmons v. State,* 785 S.W.2d 524, 530 (Mo. banc 1990), *cert. denied, Clemmons v. Missouri,* — U.S. ——, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990).

There was substantial evidence to support the conclusion that the bag found at the scene was the bag Hall had given to Grimes. Defendant testified that Hall had a brown paper bag prior to meeting with the victim and that Hall handed the victim the brown paper bag during their transaction. He testified that Hall was holding the bag in his left hand at the moment he was shot. Defendant further testified that the bag Hall gave the victim was similar to the brown paper bag contained in a photograph taken at the scene by evidence technicians. The blood found on the bag matched the victim's blood type. There was no evidence that defendant or Hall removed the brown bag from the scene and no evidence that any bags other than the brown and blue bags were at the scene. Defendant's third point is denied.

For his fourth point defendant asserts that the trial court abused its discretion by failing to grant a mistrial when the victim's mother "burst into tears" when called as a witness. He contends the state called her to inflame the passions and prejudices of the jury. This contention is not supported by the record. No objection was made at trial to the testimony of Ruby Grimes, the victim's mother, on the grounds that she was called to inflame and prejudice the jury.

The transcript reveals the following sequence of events at trial. Ms. Grimes was called to the stand as a witness. Before she could testify the court declared a recess. Out of the presence of the jury, she informed the court that for religious reasons she could not swear and the court told her she could be "affirmed." Defendant's counsel asked her if she felt ready to proceed and she said she was. The court said Ms. Grimes would testify after the recess. At this point defendant's attorney moved for a mistrial in the following language:

Before we go, Judge, for the record, I'm going to make a motion for mistrial because it would appear to be somewhat of

the beginnings of a break down as far as the witness, Ms. Ruby Grimes. She was tearful in the presence of the jury. She indicated she wanted to say something. She was tearful when she came up to the Court. At that point, all of that was in the presence of the jury. I believe that that was prejudicial, and I don't believe she did it intentionally to evoke any sympathy, but I believe it to be an emotional nature of that particular situation has prejudiced this right to receive a fair trial. The defendant would ask for a mistrial at this time.

The motion was denied without further colloquy. After the recess Ms. Grimes testified without incident.

■■■■■ The trial court has broad discretion in minimizing or eliminating the prejudicial impact of hysterical witnesses. *State v. Hamilton,* 791 S.W.2d 789, 795 (Mo.App.1990); *State v. Johnson,* 672 S.W.2d 160, 163 (Mo.App.1984). In determining whether a witness's conduct was so inflammatory as to require a new trial, the court may consider the genuineness of the outburst, whether the prosecution was at fault, whether something similar or worse may happen on retrial, and the further conduct of the trial. *Hamilton,* at 795; *Johnson,* at 163. Here the only description of the witness's conduct was that she was "tearful" at the point she was called to testify. The court immediately called a recess. The defense attorney stated on the record that she did not believe the witness did this intentionally to evoke sympathy. Since the witness was the deceased victim's mother, there was no guarantee that she would not become tearful at a future trial. After the recess the witness testified fully without incident. Her testimony had a legitimate purpose, to identify the victim from a photograph taken at the morgue. On this record we cannot hold that the trial court abused its discretion in overruling the motion for a mistrial. Point four is denied.

In his final point, defendant claims the trial court plainly erred by not *sua sponte* declaring a mistrial or instructing the jury to disregard the prosecutor's closing argument. Defendant argues that the state improperly argued that defendant bore the burden of proof of self-defense.

■■■■ Defendant did not timely object to the closing argument when made. Accordingly, our review is limited to plain error, that is whether the closing argument so impacted upon the defendant's rights as to result in a manifest injustice or a miscarriage of justice. Rule 30.20; *State v. Childers,* 801 S.W.2d 442, 444 (Mo.App. 1990).

■■■■ An appellate court should rarely grant relief on assertions that a trial court plainly erred in not *sua sponte* taking remedial action in closing argument. *State v. Simms,* 810 S.W.2d 577, 580–581 (Mo.App.1991). This is because, in the absence of a specific request for relief, any action taken by the trial court is uninvited interference with summation, which intervention itself may be error. *Id.* at 581. Substantial latitude is allowed in closing argument and, under plain error review, improper argument does not justify relief unless defendant has demonstrated the argument has a decisive effect on the jury. *Childers,* 801 S.W.2d at 445.

■■■■ The defendant challenges the following portions of the state's closing argument:

> You get down to the element of deliberation whether it's murder first or murder second, and the issue of self-defense. If you find deliberation, cool reflection, then your dealings are with murder in the first degree. If you don't, murder in the second degree if you find that the defendant acted in self-defense. That the defendant is not guilty.
>
> ⸱ ⸱ ⸱ ⸱ ⸱
>
> Now lets look—lets look at the evidence in connection with the statement of what the defendant tells you happened. Let's look at that in some detail with having in the back of your mind *the idea of is it self-defense or is it cool reflection deliberation.* And in the instruction it talks about self-defense and for self-defense to apply, defendant has to really believe he's in imminent danger of death or serious injury. Deliberation, what that instruction tells you is cool reflection upon the matter for any length of time no matter how you believe, cool reflection.

So look at the facts, what the evidence we know from his statements and the physical evidence. *Contrasting those two concepts of self-defense or cool reflection.*

[Emphasis defendant's]

The defendant also challenges the following portions of the rebuttal portion of the state's closing argument:

Know what he's trying to do? He's trying to save his own neck, ladies and gentlemen, self-defense. *I can walk out of the courtroom, if he can sell you folks that it was self-defense. That's his own out.*

. . . . .

Just the fact that [the defendant] says it's self-defense, that doesn't make it so.

[Emphasis defendant's]

Defendant claims these arguments constitute improper misstatements of the law which misled the jury into believing defendant had the burden of proving self-defense. We disagree.

Prior to the closing argument, the jury was repeatedly instructed by the court that, as an element of first or second degree murder, the state had the burden of proving beyond a reasonable doubt that defendant was not acting in self-defense. We do not find that the prosecutor thereafter misinformed the jury on this burden of proof. The statements to which complaint is made must be considered in the context of the entire argument. At the commencement of his closing argument, the prosecutor told the jury that the state was required to prove certain elements beyond a reasonable doubt and specifically mentioned the element that the defendant did not act in self-defense. He noted that two elements were undisputed, that defendant caused the victim's death by shooting and that defendant knew his conduct was practically certain to cause death. The prosecutor then proceeded to discuss the two remaining elements which were disputed, deliberation, which distinguished the crimes of first and second degree murder, and self-defense. He went through the facts and then invited the jury to decide whether the evidence showed deliberation or self-

defense. By juxtaposing the concept of deliberation with the concept of self-defense, the prosecutor did not negate the state's burden to prove defendant did not act in self-defense. The prosecutor closed the opening portion of his closing argument by telling the jury that as they looked at the evidence they would agree "[i]t's not self-defense." Likewise, in the rebuttal portion of his closing argument, the prosecutor did not misinform the jury of the burden of proof. Instead he laid out the facts which he contended demonstrated why the conduct was intentional and why it was not self-defense. The comments that defendant could "sell" the jury on self-defense and, "[j]ust the fact [the defendant] says it is self-defense, that doesn't make it so" are not erroneous statements of the burden of proof, but at most are comments on defendant's credibility in testifying to the facts creating his defense. There is no plain error. Point five is denied.

The judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and SIMON, J., concur.